The opinion of the Court was delivered by
HUGER, J.
Before I proceed to the consideration of the first and principal ground in this case, I will briefly observe on the second, that if Congress can create a legal tender, it must be by virtue of the “ power to coin money,” for nowhere in the Constitution is the power to make a legal tender expressly given to them, nor is there any other power directly given, from which the power to make a legal tender can be incidentally deduced. If, however, the power to coin money include the power to make a legal tender, the money coined, if not restrained by Congress, must be a legal tender; for, if this were not so, some further act than coining money would be necessary to making a legal tender ; and for further act, there is no authority in the Constitutiou. I shall conclude, then, that cents coined by the United States, are a legal tender, as they have not been restrained by Act, if it shall appear that the power to coin money includes the power to make a legal tender.
I shall now proceed to the consideration of the first ground, which is, in substance, a negation of the power to make a legal tender as incidental to the power of coining money.
The Constitution of the United States is so elementary in its provisions ; it is so unlike those instruments for which the common law has provided rules of construction, that a Court must always feel itself embarrassed whenever called upon to expound any part in the smallest degree doubtful. Subject it to the rules which govern penal statutes, and its active energy, if not its vital principle, must be destroyed. Apply to it the latitudinarian rules by which remedial statutes are construed, and it will be difficult, if not impossible, to avoid the exercise of legislative discretion. There are indeed a few rules furnished by the Constitution itself, and by eotemporaneous expositions sanctioned by subsequent *5211 judicial decisions, or long acquiescence, that afford something J like a limit to judicial discretion; but still there is left a field sufficiently extensive to awaken the apprehensions of those who are habitually governed by precedent. I have, however, the consolation to reflect, that the opinion I am now about to pronounce, is not only sanctioned by a majority of this Court, but that there is a higher tribunal before which it may be reviewed, and by which it must be sanctioned, before it can become the law of the land ; a tribunal so well composed, as to promise the most satisfactory decision, and of jurisdiction so enlarged, as to insure universal attention. Should it err, it would be soon known to those with whom the ultimate power of correction is lodged, and who best know how and when to apply it.
At common law, only gold and silver were a legal tender. 2 Inst. 571. In England, copper farthings and halfpence were made a legal tender under the value of sixpence, by proclamation of Charles II., and by the 14 George III., c. 42, silver coin was limited as a legal tender to sums under 251., and gold became the legal tender for all sums of and above 25Z.
*687 In this State, where the common law has been expressly adopted, anterior to all legislative and constitutional provisions on the subject, gold and silver were the only legal tenders. On the 6th February, 1782, the Legislature passed the following Act: “Whereas, bills of credit,-or paper money, issued either by the Legislature during the former government under the King of G-reat Britain, or by the Provincial Congress, or by the Legislature of this State, or by the Continental Congress, were made and established by law, to be a good and legal tender in payment of all debts and demands throughout this State ; and whereas, at present, the said laws are found inconvenient, Be it enacted, that from and after the passing of this Act, no bill or bills of credit, or paper currency whatever, are deemed and received as a legal tender.” P. Laws, 306.[1] From the passage of this Act to the adoption of the Constitution *of the United States, the only legal tenders in this State were gold and L silver, and those were so by virtue of the common law. Prior to the adoption of the Constitution of the United States, the States respectively, possessed and exercised jurisdiction over the “legal tender.” In this State, anterior to the Act of 1782, the Legislature, at different periods, adopted different legal tenders ; and it is to be observed that so completely was this power regarded as in the States, that when Congress wished their bills to be a legal tender, they were obliged to apply to the different States to have them so made, which was done in this State by Act. This power, though much abused, was never denied to be in the States, until the adoption of the Constitution. By the articles of confederation, agreed to in 1778, many years before the adoption of the Constitution, the power of coining money and regulating the value, not only of their own coin, but the coin struck by the different States, (see 4th sec. of the 9th article,[2]) was expressly given to Congress, and yet, during the existence of the confederation, the States exercised jurisdiction over the legal tender.
It has been contended that, under the articles of confederation, Congress did possess, by virtue of the power to coin, the power of making a legal tender, although the States also possessed the power to make a legal tender. In other words, the States possessed the power of declaring what should be a legal tender; and yet Congress possessed the power of declaring that something else should be the legal tender. Would not the existence of such powers involve as great an inconsistency, as that Congress should have the power to establish a bank, and the States of preventing or defeating its establishment ? If Congress did not possess the power of creating a legal tender under the confederation, they do not possess the power under the Constitution, for the grant in both instruments is the same, — “ to coin money.” The States have been limited in their exercise of power over the legal tender *to gold and silver, but it does not follow, because power has been taken from the L States, it has been given to Congress. The States are prohibited from passing ex post facto laws, impairing the obligation of contracts. Congress, however, does not therefore possess the power of doing so. Congress possesses no power that is not expressly given, or which is not necessary and proper to the carrying into execution of some power ex *688 pressly given. The people, then, have thought proper, and I think wisely, to retain in their own hands, or, at least, to withhold from Congress and the State governments, certain powers which appertain to sovereignty. They have said neither shall grant a title of nobility, nor pass any bill of attainder, or ex post facto law, impairing the obligations of contracts ; and if my construction of the Constitution be not incorrect, they have further said, that nothing but gold and silver coin shall be a legal tender for the payment of debts. .The language of the 10th section of the 1st article, is, “no State shall make anything but gold and silver coin a legal tender in the payment of debts.” The language of the 5th clause of the 8th sec. of the 1st article is, “ Congress shall have power to coin money, and regulate the value thereof.” Construe the two sections together, and the Constitution appears to intend to limit the power of the States over the legal tender, to gold and silver, and to give to Congress the power of coining gold and silver. This construction is further supported by the two following considerations: 1. One of the great objects which led to the adoption of the Constitution, was the annihilation of a spurious currency, which had for years afflicted the people of this country. Give to Congress the power of making a legal tender, and you but change the hand from which the affliction is to proceed ; so construe the Constitution as to restrict the legal tender to gold and silver, and one of the great objects for which it was ordained is accomplished. 2. The Constitution nowhere gives to Congress any control *59/11 over contracfs- It is, indeed, scrupulously *avoided. If, however, J they derive the power of making a legal tender from the power of coining money, they indirectly obtain that which was intended to be withheld.
Stark, for the motion. Davis, contra.
Prom every view I have been able to take of this subject, I am' satisfied that it was not the intention of the framers of the Constitution, to give to Congress the power of making money; they have only been intrusted with the power of coining that which was money, gold and silver. The decision of the Circuit Court must, therefore, be reversed.
Colcocic and Richardson, JJ., concurred.
Johnson, J., dissented.

 4 Stat. 608.

 1 Stat. 156.