JOHN P. CHRYSLER, Respondent, v. PETER J. RENOIS and HENRY G. GRISWOLD, Appellants.

The holder of a bill of exchange, received in part payment of a debt, evidenced by notes past due, and secured by a mortgage, held collateral thereto, and on receipt of which such past due notes are surrendered up and new ones given for the balance, is a *bona fide* holder for value of said bill of exchange.

Secondary evidence as to the contents of the notes so given up is competent, as the presumption is, that being no longer of any value they were destroyed when given up.

A bill drawn in Montreal on a business firm at Whitehall, in this State, payable in New York city in gold dollars, is a negotiable bill of exchange, and a judgment recovered on such bill should be for the amount of the bill and interest thereon in gold dollars, and with the costs in legal tender currency.

HAND — VOL. IV.    27

(Argued by appellants, and submitted by respondents December 13th, 1870, and decided December 20th, 1870.)

· APPEAL from the decision of the General Term of the Supreme Court in the fourth judicial district, affirming the judgment entered upon the report of a referee in favor of the plaintiff.

On September 11th, 1866, the defendants, who resided at Whitehall, in the State of New York, contracted with William Pillar, at Montreal, Canada, for the purchase of certain lumber to be delivered at Dickinson's Landing in Canada.

On the 13th of September, Pillar professing to the defendant Renois, that he feared that on the delivery of the lumber they would not take it, the latter gave him his draft on the defendants for 1,205 gold dollars, payable at the Park National Bank, in the city of New York, Pillar at the same time giving a receipt therefor, containing an agreement that it should not be negotiated until the contract was fulfilled.

Pillar soon after transferred the draft to the plaintiff, in part payment of notes which he held against Pillar, which were then past due, and were secured by a mortgage given as collateral thereto. On the receipt of the draft, the notes were all surrendered to Pillar, and new notes were given for the balance remaining unpaid.

Pillar failed to deliver all the lumber, and the defendants refused to pay the draft on the ground that it was not negotiable. They also took exception to the introduction of parol evidence, which was admitted to show the contents of the notes given up. Other facts are stated fully in the opinion.

The cause was tried before a referee, and on the coming in of his report judgment was entered in favor of the plaintiff, from which judgment an appeal was taken to the General Term, where the judgment below was affirmed, and from such judgment of affirmance an appeal was taken to this court.

*H. Gibson,* with *J. Gibson* of counsel, insisted that plaintiff was not a *bona fide* holder. (*Mickles* v. *Colvin,* 4 B., 304; 2 Sand. Ch., 172; 5 Bosw., 289.) That instrument

was not a bill of exchange. (5 Cow., 186; 23 W., 734; 7 Hill, 359; 7 Wall., 258; 13 Peters, 778; 17 J. R., 511; 1 P., 220; 47 B., 29.)

*Brown & Hasbrouck*, for respondents, insisted that plaintiff was holder for value. (*Pratt* v. *Coman*, 37 N. Y., 450; *Brown* v. *Leavitt*, 31 N. Y., 113.) That amount recovered was correct. (Edwards' on Bills, 730, etc.; Chitty on Bills, 684; 18 Abb., 43; 12 J., 17; 13 J., 322.)

ALLEN, J. The referee, upon sufficient evidence, if credited, has found that the plaintiff became the holder and owner of the draft in suit in good faith, and for value before its maturity. The language of the report and finding is, "that said draft was thereafter (after the making and delivery thereof to the payee), and before the same was due, for a valuable consideration, and without notice, transferred to the plaintiff, and the same was held and owned by him at the time of the commencement of this action." There being evidence tending to prove the fact thus found, the finding of the referee is conclusive upon this appeal.

The referee does not state the consideration of the transfer, but if reference is had to the case the evidence is, that the payee and indorser of the bill was indebted to the plaintiff in four promissory notes of $900 each, all past due, secured by a mortgage of real property in Canada; that upon the transfer of the bill those notes were surrendered, and canceled, and new notes taken for the difference in amount between the draft and the notes, and this transaction was on the day after the date of the bill. The bill was transferred in payment *pro tanto*, of the debt to the plaintiff, and evidence of the debt surrendered, and the security relinquished. This constituted the transferee a holder for value. (*Brown* v. *Leavitt*, 31 N. Y., 113; *Pratt* v. *Coman*, 37 id., 440.)

The question in *F. and M. Bank* v. *Empire Stone Dressing Company* (5 Bosworth, 275), was a question of estoppel,

the acceptance of the bill by the secretary of the company being without authority, in fact; and as it was not accepted at the time the plaintiff parted with its money for the bill, it was properly held, that the defendants were not concluded from questioning the validity of the acceptance. In *Mickles* v. *Colvin* (4 Barb., 304), no security was given up or canceled; and in *Clark* v. *Ely* (2 Sand. Ch. R., 166), the question was between conflicting claimants to certain negotiable promissory notes, and the party claiming as transferee against the rightful owner had, as said by the assistant vice-chancellor, " taken the notes for a precedent debt, without parting with any property or security." The cases are consistent with those decided by this court cited above, but if otherwise, the latter must prevail as authority.

The objection and exception to the admission of secondary evidence of the contents of the notes surrendered were not well taken. These instruments had accomplished their purpose, and upon their payment by the transfer of the draft and the new notes, were given up to the maker. The presumption is that they were destroyed, as there was no longer any necessity or reason for preserving them. In such cases, the law permits secondary evidence of the contents of written instruments. (*Jackson* v. *Root*, 18 J. R., 60; *Betts* v. *Jackson*, 6 W. R., 173, 181; *Mays, Exrs.,* v. *Hill*, 5 Litt. R., 309; *Yoter* v. *Sanno*, 6 Watts, 164, 166.)

The bill in suit was drawn in Montreal on a business firm at Whitehall in this State, payable in New York in dollars, the money of account of the State, and in gold dollars, a coin authorized by congress, and made a legal tender in the payment of debt. It was, therefore, negotiable as a bill of exchange. (1 R. S., 611, § 1; 9 U. S. Stat. at Large, 397.)

It is enough that it is for the payment of money and money only, in cash and not something that may differ in value from cash. (*Leiber* v. *Goodrich*, 5 Cow., 186.) It is agreed that bills payable in merchandise or anything but money, are not good bills of exchange, but the cases are not agreed in all respects as to what shall be deemed money. In this State it

is held that a promissory note, payable "in bank notes current in the city of New York " or " in New York State bills or specie," are negotiable notes within the statutes, (*Keith* v. *Jones*, 9 J. R., 120 ; *Judah* v. *Harris*, 19 J. R., 144) ; while a note payable " in Canada money " is not a negotiable note. (*Thompson* v. *Sloan*, 23 W. R., 71.) The first cases were decided upon the ground that the court might take judicial notice that bank notes, current in the city of New York, were customarily considered and treated as equivalent to money, which could not be predicated of a note payable in Canada money. Coin current in Canada might not be current in this State, and foreign bills are not regarded as money. (*Jones* v. *Fales*, 4 Mass., 245.) In other States a different rule prevails ; and bills payable in bank bills, even of the State where payable, are held not negotiable. (*McCormick* v. *Trotter*, 10 Serg. & R., 94.) In this action the bill is for 1,205 gold dollars, that is $1,205 in gold coin, and as is claimed in coin of a particular denomination ; but it is nevertheless payable in a coin known and recognized as a part of the currency of the country, coined by authority of congress and made receivable in all payments. (9 Stat. at Large, 397.) If the bill had called for $1,205 without specifying the coin or currency it would have been payable in any lawful currency, and the acceptors might have discharged their obligations by tendering payment in " gold dollars." The tender would have been in money ; but if " gold dollars " are but an article of merchandise, a commercial commodity, as claimed, a tender of these in satisfaction of an obligation for the payment of money would not be good, and a debtor could not by such tender relieve himself from his obligation. The laws have not been repealed which declare the money value of the gold and silver coin of the United States and make them a legal tender in the payment of debts. The bill has all the qualities of a negotiable bill of exchange ; it is payable absolutely, and in money, and not out of a particular fund.

There are two descriptions of lawful money in use under acts of congress (assuming the validity of the " legal tender "

acts, so called as applicable to any contract calling for money), and it does not destroy the negotiability of commercial paper or change its character, that it is in terms made payable in any description of money that is recognized and known as money current in business, and which is made a legal tender in payment of debts. (*Butler* v. *Horwitz*, 7 Wall., 258; *Bronson* v. *Rodes*, 7 Wall., 229.) Bills of exchange are favored as valuable instruments in commerce, and merchants must be permitted to make them payable in any money lawful and current in the place where payable; and if more than one description of money is recognized by the law of the place, *to select that which is most convenient to the parties*, without changing the character and legal incidents of the instruments and destroying their negotiability.

But the referee has found, as a question of fact, that the contents of the said bill of exchange or draft, were expressed in the money of account and currency of the province of Canada, and has awarded damages for non-payment upon that theory; that is, has given judgment for the value of the amount called for in Canada coin in Montreal on the day the bill matured. In this the referee erred. The contract, interpreted by the law of the place where payable, called for payment in money there current and the construction of the contract was one of law and not of fact.

The error of the referee was carried into the judgment in the assessment of the damages.

Upon this construction of the contract, and an allegation in the complaint, that the value in New York of a draft on Montreal for $1,205 was, at the time of the default in payment, $1,831.60, not denied by the answer, the referee reported in favor of the plaintiff for that amount, with interest to the date of the report, and the plaintiff had judgment accordingly. The plaintiff was entitled to a judgment following the contract, and payable in coin for the amount to which the law entitled him upon the dishonor of the bill. That was the sum specified in the bill, with interest thereon, at the rate allowed by law.

There is no warrant for an allowance of damages for the non-payment of money beyond the interest given by statute, neither can the courts compel a party, who has stipulated for the receipt of money in coin, to accept of an equivalent in depreciated currency.   So long as the inferior currency, which is excluded from the operation of the contract, and cannot be paid, or tendered in satisfaction, fluctuates in value, absolute justice cannot be done to the parties by adjudging payment in the depreciated currency of a debt due in coin, with an addition for the difference in value.

The only way in which effect can be given to the contract, is by a judgment in terms payable in the better currency to which the creditor is entitled, and an execution following the judgment, and so long as the law recognizes the two currencies of different values, judgments upon contracts for the payment in the better currency, must of necessity, be given in this form, or the distinction between the two kinds of money as affecting the rights of parties, vanishes when the contract is merged in the judgment, and the rights of a creditor under a contract for payment in coin are of no value.   This form of judgment is sanctioned by precedent, and has the warrant of the Supreme Court of the United States. (*Bronson v. Rhodes*, 7 Wall., 229 ; *Cheanykee v. United States*, 3 id., 320.)

The judgment must be modified, and reduced to the amount to which the plaintiff was entitled, payable in coin, with costs of the court below, payable in currency, without costs to either party upon the appeal.

All the judges concurring, judgment modified in accordance with the opinion of ALLEN, J.