WILLIAM MILLER and Others, Respondents, v. ELIJAH BOYER, Appellant.

*Action on a Bohemian seed grain promissory note — plaintiff must show that he is a bona fide purchaser for value before maturity — veracity of testimony a question for the jury.*

In an action brought upon a promissory note known generally as a Bohemian seed grain note, by the assignee thereof, the burden of proof is upon the plaintiff to show that he is a *bona fide* purchaser of the note for value before maturity.

When upon the trial of an action a party thereto testifies as a witness, the veracity of such testimony is to be determined by the jury, and such testimony should be submitted to the jury for its determination, unless the testimony of such party is corroborated as to its material facts by testimony coming from a disinterested source.

APPEAL by the defendant, Elijah Boyer, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Monroe on the 21st day of June, 1893, upon the verdict of a jury directed by the court after a trial at the Monroe Circuit, and also from an order made at the Steuben Special Term and entered in the office of the clerk of Monroe county on the 9th day of January, 1894, denying the defendant's motion for a new trial made upon a case containing exceptions.

*Quincy G. T. Parker*, for the appellant.

*Elbridge L. Adams*, for the respondents.

LEWIS, J.:

This action was brought upon a promissory note for $100, given by the defendant, payable to W. J. Curtis or bearer for seed grain. It is what is generally known as a Bohemian seed grain note. The defendant concededly made the note, but claims it was obtained from him by fraudulent means, and that the plaintiffs are not *bona fide* holders thereof for value before maturity.

The note was obtained from the defendant by an agent of a Pennsylvania seed company. It is not necessary to rehearse the means resorted to to obtain the note. They were substantially the same as have been stated so many times in these Bohemian note cases decided by this court.

The defendant unquestionably consented to make the note, with a full and complete understanding of the scheme stated to him by the agent of the company. The agent stated to him just how it was proposed to be operated. The defendant expected to realize a profit of $100 out of the enterprise if the seed company performed its part of the agreement. The plan did not involve the expenditure of any money or labor by him. He was disappointed for the reason that the company failed to sell his crop of oats the following year as agreed.

This court held in *Watson* v. *Blossom* (18 N. Y. St. Repr. 727), upon a similar state of facts, that the burden of proof was upon the plaintiff to show that he was a *bona fide* purchaser of the note for value before maturity.

The trial court so held in this case, and the plaintiffs, to show that they were such *bona fide* holders, called as a witness the plaintiff Ettenheimer.

His testimony tended to show that the plaintiffs purchased the note in suit before maturity of a Mr. Parsons, and that at the same time they purchased of Parsons two other small notes; that they paid for the notes in jewelry.

Some of the facts testified to by Mr. Ettenheimer should have had a tendency, perhaps, to raise a suspicion in the minds of the plaintiffs that it was a Bohemian note, and required them, in order to be considered *bona fide* holders, to have made a more careful and particular examination than they did into the facts attending the making of the note; but assuming that the facts testified to by Ettenheimer, if true, established that the plaintiffs were *bona fide* holders of the note for value before maturity, he being one of the plaintiffs, his veracity was a question for the jury (*Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191; *Bookheim* v. *Alexander,* 64 Hun, 458; *Goldsmith* v. *Coverly,* 27 N. Y. Supp. 716), and it should have been submitted to them for their determination unless his testimony was, as to its material facts, corroborated by testimony coming from a disinterested source. The only other witness called by the plaintiffs was Charles Beemer.

Ettenheimer had testified that the note was delivered to him by Parsons before they purchased it with the view of enabling the plaintiffs to investigate and satisfy themselves as to its genuineness;

that he had purchased other seed grain notes of the father of Mr. Parsons, and that he understood that a Mr. Kurz had purchased such notes, and, therefore, he called upon him and made inquiry as to the notes; that he was informed by Kurz that he had purchased many of them, and that they had always been paid; that when he went to make the inquiry of Kurz he found Mr. Beemer and a man by the name of Pote in Kurz's store; that Kurz had since died and Pote had left the State.

Beemer testified : " I reside in Rochester. Have an office approximate to Kurz's tailor establishment; I was present in 1889 when Mr. Ettenheimer, who has just been on the stand, came to Kurz; I heard Mr. Ettenheimer ask Kurz if he considered those notes good; showed him the notes, and Kurz told him that he did; that he had been dealing in the notes and they were always paid; that he had taken them; I just heard a little of the conversation. I was standing four or five feet away and I wasn't listening exactly to the conversation until Mr. Ettenheimer spoke in a little louder voice, and I heard him say something about those notes. These two or three sentences is all I heard. I wasn't present at Ettenheimer's when any of this talk was had."

It may well be doubted whether this evidence of Beemer's in any material respect corroborated the testimony of Ettenheimer. Beemer did not identify the notes. He left it entirely uncertain whether the note in suit was one of the notes concerning which the inquiry was made.

His evidence fails to corroborate Ettenheimer's evidence as to what was paid for the note, or whether there was anything paid for it, or as to the time that the plaintiffs actually purchased the note. His evidence simply shows the quite unimportant circumstance that Mr. Ettenheimer was inquiring of Kurz about some notes.

The only other piece of corroborating evidence is the letter from the postmaster at Alden in reply to an inquiry from Mr. Ettenheimer to the effect that he knew the maker of the note and considered him honorable and upright and good for the amount of the note. It does not seem to us that the testimony of Mr. Ettenheimer was so far corroborated upon the material facts incumbent upon the plaintiffs to establish, as to justify the trial court in taking the case from the jury.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, costs to abide the event.